**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-10461

————————————

SPIRIT AIRLINES, LLC,

*Petitioner,*

*versus*

TRANSPORTATION SECURITY ADMINISTRATION,

*Respondent.*

————————————

Petition for Review of a Decision of the
Transportation Security Administration
Agency No. B30-19-UF7-UF-27168

————————————

Before WILLIAM PRYOR, Chief Judge, and BRASHER and ABUDU, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This petition requires us to decide whether Spirit Airlines must remit security fees to the Transportation Security Administra-

tion collected from customers who do not travel. Congress requires airlines to collect security fees from their customers to help defray the costs of airport security services. The airlines in turn must remit collected fees to the Administration. If a customer does not travel, airlines may reclaim fees remitted to the Administration on the condition that they refund the fees to the customer. Spirit provides a customer who cancels a ticket a credit toward future travel, which expires 60 days after issuance. When a credit expires unused, Spirit retains the value of the credit (including the security fee) as revenue. The Administration audited Spirit and determined that Spirit owed millions of dollars because it had retained the portion of expired credits attributable to the security fee. We agree with the Administration that the fee statute requires all collected fees to be remitted to the Administration, and expired credits do not count as refunds. So we deny the petition for review.

## I. BACKGROUND

After the September 11, 2001, terrorist attacks, Congress enacted sweeping aviation security reforms. *See* Aviation and Transportation Security Act, Pub. L. No. 107-71, 115 Stat. 597 (2001). To fund some of the new security measures, Congress required the Transportation Security Administration to "impose a uniform fee, on passengers of air carriers and foreign air carriers in air transportation and intrastate air transportation originating at airports in the United States." 49 U.S.C. § 44940(a)(1). The fee is currently $5.60 for a one-way trip. 49 C.F.R. § 1510.5(a).

Although the fee was "impose[d] . . . on passengers," 49 U.S.C. § 44940(a)(1), Congress enlisted the airlines to collect it, *id.* § 44940(e)(2). And it provided that "[a]ll fees imposed and amounts collected under this section are payable to the Administrator of the Transportation Security Administration" by the end of the following month after the fee was "collected." *Id.* § 44940(e)(1), (3). Congress also allowed the Administration to "refund any fee paid by mistake or any amount paid in excess of that required." *Id.* § 44940(g).

In 2002, a trade group asked the Administration how airlines should handle security fees when "a passenger does not travel" and his ticket "expire[s] . . . [with] no value toward future travel." The trade group explained that "[d]epending upon the ticket, the timing of . . . expiration may be as early as the originally scheduled date of transportation or as much as 12 months after that date." The Administration responded that in that scenario, the "Security Fee involved is subject to a refund by the collecting carrier to the ticket purchaser." If the airline had already remitted the fee to the Administration, "the carrier may offset the refund by deducting it from the . . . Security Fees remitted to [the Administration] for the month in which the refund is provided." But "[i]n any case where an air carrier does not refund . . . Security Fees to the ticket purchaser, the fees must be remitted to or remain with [the Administration]." The Administration posted the trade group's letter and its response on its public docket.

Spirit collects the security fee from customers when they purchase tickets. When customers cancel some tickets, Spirit imposes a cancellation fee of the lesser of $100 or the total amount paid for the ticket, including taxes and fees. If any value remains after the cancellation fee, Spirit provides a credit to the customer that he may use to purchase future services from Spirit. The credit expires after 60 days. If a credit expires unused, "Spirit . . . recognizes the amount of the unused credit . . . as revenue," including the portion attributable to the security fee. In that scenario, Spirit either does not remit the security fee to the Administration, or it offsets the fee from its next payment to the Administration if it has already remitted the fee.

In 2019, the audit division of U.S. Customs and Border Protection reviewed Spirit's security fee compliance. The audit determined that Spirit "under-remitted . . . Security Fees" by retaining the amount attributable to the security fee from expired credits. It explained that Spirit was required either to remit the security fees to the Administration or to refund them to passengers, and an expired credit did not count as a refund. The audit calculated a liability of $2,838,849.11. The Administration adopted the audit's findings and liability determination.

Spirit sought administrative review. It argued that the Administration lacked statutory authority to collect the security fee if a customer does not fly because "the customer is not a 'passenger' of an 'air carrier' in 'air transportation.'" *See id.* § 44940(a)(1). It also argued, in the alternative, that even if it were required to either

refund the fee or remit it to the Administration, it did refund the fee "in the form of both (1) a [travel] credit . . . and (2) a credit against the cancellation fee owed by the customer."

The Administration upheld its liability determination. It explained that "[t]he Fee statute . . . and its implementing regulations . . . make clear that carriers are allowed to only possess collected Fee amounts temporarily and that these collections must be remitted to [the Administration] (if not refunded to the passenger), regardless of whether the air transportation is used." It rejected Spirit's argument that subsection (a)(1) applies only to persons who travel. It concluded that subsection (e) "require[s] that an air carrier . . . collect and remit a Fee to [the Administration] without regard to whether travel occurs." And it relied on its 2002 guidance letter, which required airlines to either refund to customers or remit to the Administration any security fees collected from customers who do not travel.

## II. STANDARDS OF REVIEW

Three standards govern our review. We review the Administration's decision to determine whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). We review its statutory interpretation *de novo*. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2273 (2024). And we accept its factual findings as "conclusive" "if supported by substantial evidence." 49 U.S.C. § 46110(c). We also review an alleged denial of due process for lack of fair notice *de novo*. *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010).

### III. DISCUSSION

Spirit argues that the Administration's liability determination was contrary to law because the Administration may not collect the security fee from customers who do not travel or whenever Spirit refunded the disputed fee through travel credits. Spirit also argues that the liability determination violates due process because it lacked fair notice that it owed the disputed fees. We reject these arguments.

*A. The Administration's Decision Was Not Contrary to Law.*

We divide this section into two parts. We first explain that section 44940 requires airlines to remit to the Administration any security fees they collect, including from customers who do not travel. We then explain that Spirit is liable for the unremitted fees under the Administration's guidance.

1. Section 44940 Requires Airlines to Remit Any Collected Fees to the Administration.

We agree with Spirit that the security fee required by subsection (a)(1) contemplates an active passenger, not a prospective one. The fee applies to "passengers of air carriers . . . in air transportation." 49 U.S.C. § 44940(a)(1). A "passenger" is "a traveler in a public conveyance (as a train, bus, airplane, or ship)." WEBSTER'S THIRD NEW INT'L DICTIONARY 1650 (1993). An "air carrier" is someone "undertaking . . . to provide air transportation." 49 U.S.C. § 40102(a)(2). "In" means "during the course of." WEBSTER'S THIRD, *supra*, at 1139. And "air transportation" means "the transportation of passengers . . . by aircraft." 49 U.S.C. § 40102(a)(5),

(23), (25) (defining "foreign" and "interstate" "air transportation"). Subsection (a)(1) applies to passengers during the course of transportation by aircraft operated by an air carrier. But that reading of the statute does not resolve this petition.

Although only passengers owe the security fee, section 44940 contemplates the fee's collection from customers who later do not travel. Subsection (e)(1) provides that "[a]ll fees imposed and *amounts collected* under this section are payable to the . . . Administration." *Id.* § 44940(e)(1) (emphasis added). By distinguishing between "fees imposed" and "amounts collected," the statute makes clear that the imposition of the fee is distinct from its collection. To be sure, an airline may not be required to collect the fee until it is "imposed," *id.* § 44940(e)(2), which does not occur until a ticket purchaser becomes a passenger. But if an airline chooses to collect the fee earlier—for instance, when it sells a ticket—that "amount[] collected" becomes "payable to the . . . Administration" by the end of the following calendar month regardless of the scheduled travel date. *Id.* § 44940(e)(1), (3).

Spirit protests that we should not read the "ancillary . . . provisions" in subsection (e) to "override the heart of the fee statute memorialized in subsection (a)." It points to *Southwest Airlines Co. v. United States*, where the Court of International Trade declined to read a "single, isolated provision" in a different fee statute "to suggest that [the government's] entitlement to the fee is based entirely on" an airline's "mere collection of the funds" from passengers. 777

F. Supp. 3d 1318, 1327 (Ct. Int'l Trade 2025) (interpreting 19 U.S.C. § 58c). Spirit contends that the same logic applies to subsection (e).

We disagree. Subsection (e) is not an "isolated" part of section 44940 but instead an integral part of the statutory scheme for administering the security fee. In addition to subsection (e), subsection (g) expressly contemplates that airlines will collect and remit fees that are not owed. It provides that the "Administration *may* refund any fee paid by mistake or any amount paid in excess of that required." 49 U.S.C. § 44940(g) (emphasis added). A fee paid on behalf of someone who does not travel is undoubtedly "in excess of that required." But the statute does not guarantee a refund in that scenario. Instead, the use of "may" in subsection (g) "plainly confers a discretionary authority" on the Administration to decide whether and on what terms to refund remitted fees. *See Biden v. Texas*, 142 S. Ct. 2528, 2541 (2022) (emphasis omitted).

Spirit disputes reliance on subsection (g) because the Administration did not cite that provision in its decision. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) (explaining that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based"). But "we will 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Hewitt v. Comm'r of IRS*, 21 F.4th 1336, 1342 (11th Cir. 2021) (quoting *Motor Vehicle Mfrs. Ass'n of the United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). We

can reasonably discern that the Administration relied on subsection (g)—the refund provision—when it invoked its discretionary authority to grant refunds.

### 2. Expired Credits Are Not Refunds Under the Administration's Guidance.

When we read subsections (a), (e), and (g) together, section 44940 makes clear that when an airline collects a fee, it must remit it to the Administration by the end of the following month, and if the passenger does not owe the remitted fee because he does not travel, the Administration may provide a refund in its discretion. Section 44940 does not permit Spirit to decline to remit a fee or reclaim a fee it remitted. The only question then is whether the Administration permitted Spirit to reclaim the disputed funds.

Expired credits do not constitute a refund under the 2002 guidance. That guidance requires airlines to refund the security fee when "a ticket purchaser does not use a ticket for air transportation and the ticket then expires or loses its value," which may not occur until "as much as 12 months" after the originally scheduled date of travel. A ticket that retains some value after cancellation is a credit by another name. Because the guidance requires a refund after a credit has expired, an expired credit itself is not a refund.

Spirit argues that there is a "well-settled principle that merchants' credits are a refund." Maybe so, but the 2002 guidance does not treat an expired credit as a refund. Likewise, Spirit's reliance on *Caver v. Central Alabama Electric Cooperative*, 845 F.3d 1135 (11th Cir. 2017), is misplaced. Our interpretation of "patronage refund[]" in

that case depended on the terms of an Alabama statute, and it says nothing about how the Administration conditioned security fee refunds in the 2002 guidance. *Id.* at 1147.

Spirit advances an additional theory that applies to some of the tickets. During the audit period, Spirit imposed a cancellation fee of the lesser of $100 or the cost of the ticket, including the security fee. Spirit contends that it refunded the security fee from those tickets by "appl[ying] the refund credit . . . to satisfy . . . [the] cancellation fee." But a credit that Spirit reclaims immediately is no more of a refund than a credit that Spirit reclaims after 60 days.

*B. Spirit Had Fair Notice It Could Not Retain the Disputed Funds.*

Spirit argues that the Administration's decision contravenes the fair-notice doctrine because it "rests on a previously unannounced interpretation of 'refund.'" We have held that "[a]n enforcement action may violate due process if the defendant does not have fair notice of the agency's interpretation of a law or statute, even if that interpretation is reasonable." *SEC v. Almagarby*, 92 F.4th 1306, 1319 (11th Cir. 2024) (citation and internal quotation marks omitted). But no violation occurred here.

Spirit had fair notice that it could not retain the disputed funds. The plain text of section 44940 made clear that Spirit had to remit any "amounts collected" to the Administration unless the Administration granted a refund. 49 U.S.C. § 44940(e)(1), (g). And the 2002 guidance provided notice that when an analogous travel credit expires and loses its value, an airline must refund the fee or remit it to the Administration. Spirit responds that it did not know

about the 2002 guidance before the audit. But in that case, Spirit should have assumed that the statutory default rule applied and that it had to remit any collected funds to the Administration.

Spirit maintains that the Administration never objected to its handling of the security fee during previous audits. But the Administration's past silence does not override the plain text of section 44940. Spirit points to analogous petitions from other airlines as evidence that the Administration's interpretation of section 44940 was unforeseeable, yet many airlines managed to comply with the statute.

## IV. CONCLUSION

We **DENY** the petition for review.